Serv. Prod. Inc. *v.* Am. Insul. Co., Appellant.

470

Argued December 9, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Charles G. Gartling,* for appellant.

*Alvin L. Levi* of *Levi and Mandel,* for appellee.

Opinion by Gawthrop, J., March 5, 1932:

This is an action of assumpsit to recover for merchandise sold and delivered by plaintiff to defendant on September 13, 1930. The affidavit of defense admitted defendant's liability to pay for these goods and set up a counter-claim for damages alleged to have resulted from the failure of plaintiff to deliver goods of like character under a written order signed by defendant. Plaintiff took a rule for judgment and filed a reply to defendant's counter-claim, raising questions of law based upon the alleged insufficiency of the counter-claim. Defendant obtained leave to file a supplemental counter-claim and finally filed a fourth amended counter-claim. The court below decided that the counter-claim was insufficient and

entered judgment for plaintiff for the full amount of its claim. Defendant appeals.

The following facts appear in the pleadings: On October 10, 1930, Seeling, plaintiff's sales manager, secured from defendant a written order for a minimum of ten and a maximum of fifteen carloads of expansion joint for a specified price. The order provided that defendant would furnish "detailed specifications for either the ten or fifteen carloads within one week from this date. Shipment dates will be given you on each individual order." The order was subject to acceptance or rejection by Seeling's principal, as evidenced by the following words at the bottom of the printed form of order: "Accepted: Servicised Premoulded Products, Inc. By ......" On October 11, 1930, defendant, at Philadelphia, wrote to plaintiff's president, Fischer, at Chicago, stating that "Mr. Seeling called today and I gave him an order, which I trust is pleasing to you, and I hope to hear again from Mr. Seeling the middle of next week, after he has been in touch with you." On October 14th appellant's president inquired of Seeling over the telephone "why the written order of October 10, 1930, had not been returned with the written approval of said Fischer as president of plaintiff company" and "Seeling replied that said Mr. Fischer was sending a written acceptance of the business in a letter he was sending to defendant that day." On the same day appellant's president wrote to Seeling requesting deliveries of fifteen cars of expansion joint in installments as specified in the letter which concluded "I trust the above is satisfactory to you, and if it is, we will send our orders for delivery as noted above." On October 16th defendant received a letter from appellee's president, dated October 14, 1930, the material part of which is as follows: "I have your letter under date of October 11th, and Mr. Seeling informed

me of the order you placed with him. I suggested that these cars go forward, one car this month, one car in November, four cars in December, four in January and four in February. We wish to thank you very much for your business." On November 11, 1930, defendant received from Seeling a letter of the same date informing it of "a change in the schedule discounts," and "in view of this notice, we, of course, are obliged to withdraw any and all offers made prior to November 7th."

Appellant contends that upon the facts above recited there was a binding contract concluded between the parties. The learned judge of the court below decided otherwise, and we agree with him. The original order of October 10, 1930, discloses that it fails to cover all the details of the order, to wit, the dates of delivery. But even if it were to be conceded for present purposes that this incomplete order, if accepted, could form the basis of a binding contract, the fact is that appellant on October 14, 1930, before receiving any acknowledgment or acceptance whatsoever, submitted to appellee definite information as to its requirements on that subject, specifying the dates of delivery, and said "I trust the above is satisfactory to you and if it is we will send our orders for delivery as noted above." When appellee's president wrote the letter of October 14th, acknowledging appellant's letter of October 11th and thanking the latter for the business, he suggested a shipping schedule considerably different from that proposed by appellee in its letter of October 14th. In view of the facts that appellant made its order conditioned upon the observance of certain shipping directions to be furnished by it, and appellee made a counter-proposal as to those dates without making any formal acceptance of the order, it would seem that both parties regarded the dates of shipments as a vital matter. Inspection of

the counter-claim discloses that appellant's view was that the shipping dates were not a negligible factor in the transaction, as there were great variations of prices from month to month. It is very clear that there was no meeting of the minds of the parties on the subject of shipping dates, and hence no contract. We adopt the reasoning and language of the court below that "in using the phraseology, 'if it is [i, e., shipment schedule satisfactory], we will send our orders, etc.,' defendant certainly reserved the right to reject shipments made at other intervals." We are of one mind that appellee's letter of October 14th was at most a polite reply to appellant's letter of October 11th, with a counter-proposal, and not an unconditional acceptance of appellant's original order. It follows that no contract arose either by an acceptance of the original order or from the order and the correspondence which followed. A contract must arise from the acceptance of the last stated terms, and the acceptance must be identical, in order to bring the minds of the parties together: Vitro Mfg. Co. v. Standard Chemical Co., 291 Pa. 85. "If an act is requested that very act and no other must be given ...... and if any provision is added to which the offerer did not assent, the consequence is not merely that the provision is not binding and that no contract is formed; but that the offer is rejected:" Williston on Contracts, Vol. 1, 73. This conclusion makes it unnecessary to discuss the question whether, since the contract involved an amount in excess of $500, there was sufficient memorandum within Section 4 of the Sales Act of May 10, 1915, P. L. 543. The opinion filed by the court below fully justifies his conclusions.

The assignments of error are overruled and the judgment is affirmed.